Moncure, J.
delivered the opinion of the court:
This case presents for decision the question, whether the goods, of the larceny of which the prisoner was convicted, were taken by him against the will or without the consent of the owner.
Larceny, at common law, is the taking and carrying *806 away of the personal goods of another, against his will or without his consent, and with a felonious intent. There must be a taking or severance of the goods from the possession of the owner on the ground that larceny includes a trespass. If there be no trespass in taking goods, there can be no larceny in carrying them away. 2 Russ. 95; 1 Hawk. c. 33, § 2. But the possession of the owner may be actual or constructive. If it appear that although there is a delivéry by the owner, yet the legal possession still remains exclusively in him, larceny may be committed exactly as if no such delivery had been made. Thus, if a person to whom goods are delivered has the bare charge, custody or use of them, and the legal possession remains in the owner, such person may commit larceny by a fraudulent conversion of the goods to his own use. 2 Russ. 106; 1 Hale 506; 1 Hawk. c. 33, § 6; Arch. Crim. Pl. edition of 1846, p. 192. The most familiar application of the rule -is, to the case of servants, whose possession of their master’s goods by his delivery or permission is the possession of the master himself; 2 Russ. 197; 2 East P. C. 564, 682, 683; Walker v. Commonwealth, 8 Leigh 743; and to the case of a guest at an inn, who may be guilty of larceny in taking a piece of plate or other thing set before him for his accommodation; for he hath not the possession delivered to him, but merely the use. 2 Russ. 107; Arch. 192; 1 Hale 506; 1 Hawk. c. 33, § 1. “ The distinction, (Says Russell,) between a bare charge or special use of goods, and a general bailment of them, seems to be sufficiently intelligible; and it seems consistent with principle, that in the former case the legal possession should be considered as remaining in the owner; and in the latter as having passed to the bailee; and that therefore in the former case larceny may be committed of them by the person to whom they have been delivered, and that in the *807 latter it may not, .unless there be a determination of the privity of contract: but it is in the application of this doctrine to particular cases that the distinctions seem to become obscure.” 2 Russ. 108. How does the doctrine apply to the facts of this case? Were the goods delivered to the prisoner on a bailment; or merely for special use,'and without changing the legal possession of the owner ?
If the prisoner had fraudulently converted to his own use a piece of plate, or other thing delivered to him for his accommodation as a guest in the tavern of the pi’osecutor, we have seen that he would have been guilty of larceny. If he had so converted to his own use a book handed to him to read for his amusement while he continued to be such guest, there can be no doubt he would have been guilty of larceny. Why does not the same principle apply to this case, in which the prisoner fraudulently converted to his own use a gun delivered to him “to shoot some robins” for his amusement while he continued to be such guest ? Is it because the gun was not to be used in the house? The rule under consideration does not require the property to be used in the house of the owner. Suppose the prosecutor had accompanied the prisoner when he went over the road to shoot the robins, and the gun had been converted in the presence of the prosecutor: Or, suppose the gun had been handed to the prisoner to shoot some robins in full view of the house, and that, instead of shooting them, he had walked off with the gun and converted it to his own use: Would he not, in either case, have been guilty of larceny? But the rule does not require that the property should be converted in the presence or the sight of the owner. Nor indeed does it require that the relation of master and servant, or landlord and guest, should exist between the owner of the property and the person converting it. No writer has *808 laid down the rule under any such restriction. As down by all the writers, it only requires that the converting the property should be entitled merely to a charge or special use, and not the legal possession of it. In the familiar cases of master and servant, and landlord and guest, the rule generally, if not always, applies; because generally, if not always, a servant or guest has a mere charge or special use of the property of the master or landlord. These cases are therefore stated by writers as instances of the application of the rule; but as instances only, and not as limitations or restrictions of the rule. The question in every case is, Whether, under all the circumstances, a bare charge or special use, or a legal possession under a bailment exists? There is rarely any difficulty in solving the question when the relation of master and servant, or landlord and guest subsists between the parties at the time of the conversion, or where the property is delivered to be used in the presence of the owner. In cases of this kind, the property being resumable by the owner every moment, his dominion over it is as perfect as before; and the person to whom it is delivered has at most no more than a bare limited use or charge and not the legal possession of it. 2 Euss. 108. The same principle seems to be generally applicable wherever property, whether it be a gun or any thing else, held by a ¡person, whether he be an inn keeper or not, for.the, use and accommodation of his family, is. delivered to member or visitor of the family to be temporarily used by him as such, whether in the presence of the owner or not.
A difficulty sometimes arises in the application of the rule to other cases. Generally, though not always, where property is delivered to a person' who is not a servant or guest of the owner, or a member or visitor of his family, and to be used elsewhere than in the *809 ownei-’s presence, a bailment, and not a mere change or special use, is created. There is no difficulty, we think, in the application of the rule to this case. The relation of landlord and guest subsisted between the prosecutor and prisoner, who were strangers to each other at the time of the conversion. The relation was expected to be of very short duration, and to terminate during the same evening, or at least the next morning. The occasion for delivering the gun was very sudden; and was induced by the return of the prosecutor’s son- from shooting some birds within a short distance of the house. The object of it was to afford the prisoner some amusement during the evening while the prosecutor was absent in his field. It was not intended that the use should continue longer than the prisoner continued to be a guest; nor expected that the gun would be carried far from the house, and perhaps not off the land of the prosecutor. It was offered to the prisoner “ to shoot some robins;” and he took the gun, bird bag and powder flask, and went over the road; and prosecutor heard him shoot once or twice before he left the house on his return to ! the field. Under these circumstances, we think the prisoner had a mere special use of the property, and not a legal possession of it; that the owner’s legal " possession was unbroken by such special use; that the property was in his legal possession when it was fraudulently carried away by the prisoner; and that the prisoner took it against the will or without the consent of the owner. He was therefore properly convicted of larceny.
Being of opinion that the delivery of the property by the prosecutor to the prisoner did not amount to a bailment, it is of course unnecessary to consider whether the evidence was sufficient to warrant the jury in finding.that the felonious intent existed at the time of such delivery; or whether, if such delivery *810 had amounted to a bailment, and the felonious intent had not existed at the time of the delivery, but had arisen afterwards, the prisoner would have been guilty of larceny under the Code, ch. 192, § 21, p. 730.
We are of opinioiTTEat there is no error in the judgment, and that it be affirmed.
Daniel, J.
The certificate of facts shows that the delivery of the property, of the theft whereof the-prisoner has been convicted, was made to him by the owner. In order, therefore, to vindicate the judgment of the Circuit court, it must, I apprehend, be shown, either that the delivery was fraudulently procured by the prisoner with a felonious intent, at the time, to convert the property to his own use, or that the purposes and uses with and for which the delivery was made, were of a nature so restricted and special as to leave the legal possession of‘ the property, notwithstanding the delifei'y, still exclusively in the owner, and to place the prisoner, on his subsequent conversion of the property, in the same predicament as if he had then acquired the possession, against the consent of the owner, and with a felonious design.
It must be conceded that the conduct of the prisoner is well calculated to produce the impression that he came to Sweeney’s with some bad design. It does not seem uncharitable to found, on the various false statements which he made to Sweeney about himself, his business, his plans, and his relationship and connexion with others, and his subsequent conduct in the conversion of the property of Sweeney, the suspicion that he was on the look-out for a favorable opportunity to practice some fraud on Sweeney, or perhaps to perpetrate a larceny of some of his goods. It must, however, I think, be also conceded that the conduct of the prisoner, in making these false- statements, is not irreconcilable with the idea that he designed and *811 wished thereby merely to produce upon Sweeney’s mind favorable impressions as to his character and standing, without any purpose of ulterior fraud or wrong to him or others. It is obvious that the testimony does not disclose the resort to any trick, device, stratagem or artifice by the prisoner, which from its very nature held out an immediate inducement or motive to Sweeney to lend the gun, or indeed to trust the prisoner with the possession of any of his goods. Indeed, it does not appear that the prisoner gave any intimation, by word or deed, that he desired the use of the gun. He was the mere recipient of an unsolicited act of courtesy or kindness gratuitously proffered by the owner of the property. And unless it can be maintained that every man who resorts to falsehood for the purpose of creating or maintaining with another a character for respectability, trustworthiness or responsibility, may be treated as a thief when he converts to his own use property which may have been entrusted to him on the faith of such character, I do not see how we can hold that the delivery of the property was in this case procured by fraud. The conduct of the prisoner preceding the delivery of the property is reconcilable with too many hypotheses — the pointings of his falsehoods seem to me too indeterminate and vague — the delivery of the property appears too remotely connected with the means supposed to have been used by him to effect it — to justify us in deducing the loan of the gun or license to use it as the legal consequence of the prisoner’s fraud.
The verdict of the jury, it is true, especially in respect to what it must be taken to say relative to the prisoner’s motives and designs, is entitled to great weight. Still, after allowing to the verdict the fullest weight authorized by the practice now prevailing in this court, I have been unable to discover, in the cer *812 tificate of facts, any sufficient warrant for the prisoner’s conviction, so far as it rests on the first ground here taken in its support.
Can it be sustained on the second ground ?
There can, I apprehend, be no doubt that when the delivery of goods is fairly obtained on hire or loan, no subsequent wrongful conversion of them pending the contract will amount to larceny.
There are, it is true, many cases in the English courts holding that when the purpose of the hiring or loan for which the delivery was made had ended, felony might be committed by a conversion of the goods. This doctrine, so far as it eould be invoked here, was, however, fully considered by the judges in the case of Rex v. Banks, 1 Russ. & Ry. Cr. Cases 441, and decided to be wrong.
It appeared that the prisoner had borrowed a horse for the purpose, as he said, of carrying a child to a surgeon. Whether he carried the child thither did not appear; but the day following, after the purpose for which he borrowed the horse was over, he took the horse in a different direction, and sold it. The jury (it is stated) thought the prisoner had no felonious intention when he took the horse; but as it was borrowed for a special purpose, and that purpose was over, when the prisoner took the horse to the place where he sold it, the judge presiding at the trial submitted it to the consideration of the judges whether the subsequent disposing of the horse, when the purpose for which it was borrowed was no longer in view, did not in law include in it a felonious taking. Upon consideration, the judges were of opinion that the doctrine on the subject asserted in previous cases was not correct. They held that if the prisoner had not a felonious intention when he originally took the horse, his subsequent withholding and disposing of it did not *813 constitute a new felonious taking, or make him guilty of felony; and that consequently the conviction could not be supported.
I have seen no subsequent decision, in which the authority of this case has been questioned: And in the 2d vol. of Russell on Crimes, p. 57, the author, after citing the case, declares upon the force of it, that! it is now settled, that when the owner parts with the possession of goods for a special purpose, and the bailee, when that purpose is executed, neglects to return, and afterwards disposes of them, if such bailee had not a felonious intention when he originally took the goods, a subsequent withholding and disposing pf them will not constitute a new felonious taking, nor make him guilty of felony.
So again, at page 21 of his second volume, the author says that there were decisions to the effect that when the delivery of goods is made for a certain special and particular purpose, the possession is still supposed to reside unparted with in the first proprietor. And that if a watchmaker steal a watch delivered him to clean; or if a person steal goods in a chest delivered to him with the key for safe custody; or clothes delivered for the purpose of being washed : In all these instances he says the goods taken have been thought to remain in the possession of the proprietor, and the taking of them away held to be felony. But (he adds) unless in these cases the privity of contract under which the goods were delivered, appeared by some means to have been determined, it seems difficult to distinguish them from the cases of a goldsmith to whom plate is delivered to work or to weigh; a tailor to whom cloth is delivered that he may make clothes with it; and a friend who is entrusted with property to keep for the owner’s use; in which cases an embezzlement or conversion of the goods by the party to whom they are delivered, has *814 been said not to amount to felony. In these latter cases, (he continues,) as well as in the former, the delivery of the goods is made only for a special purpose? yet it seems that the possession of them has not been considered as remaining with the owner, but as having passed to the party by a lawful delivery without fraud, and therefore not the subject of a subsequent felonious taking.
It is argued here, however, that as the prisoner was the guest of Sweeney at the time when he acquired possession of the gun, though he took it not only by the consent but at the instance of Sweeney, he does-not stand on the same footing as if no such relation between the parties existed. It is argued that, because of such relation, and the character of the license given to him, he is to be treated as having the bare custody of the gun, and that the exclusive legal possession must still, notwithstanding such custody, be held to have remained with Sweeney.
As the main stress of the effort to sustain the conviction was laid on this ground, I have made it the subject of the fullest examination and consideration in my power. But I have been unable to discover in the authorities to which I have had access, any sufficient warrant for such distinction. It is true, in Hale’s Pleas of the Crown, vol. 1, p. 505, it is said that he that hath the care of another’s goods hath not the possession of them, and therefore may by his felonious embezzling of them be guilty of felony; as the butler that hath the charge of the master’s plate, the shep-. herd that hath the charge of his master’s sheep. ' The like law for him that takes a piece of plate set before him to drink in a tavern, &c. for he hath only a liberty to use, not a possession by delivery.
So in East’s Crown Law, vol. 2, p. 682, after citing instances in which-the delivery had been held to con- - fer the bare charge or custody, as distinguished from *815 the possession, the author says, the same rule applies to him who has a bare special use of goods; as in the case of a guest in the owner’s house: for none of these persons have properly speaking the possession. The proposition is stated in like terms in other elementary works.
I can perceive nothing in these declarations and illustrations of general principles, from which to infer that there is any thing in the relation between a transient guest and the inn keeper, with whom- he is staying, which places the guest on a footing of criminal responsibility, in respect to the goods of the inn keeper, different from that which would be occupied by any other person to whom goods might be delivered for a momentary purpose to be accomplished in the house, or in the presence of the owner. Thus Í apprehend, in the case of the piece of plate, if instead of being placed before the guest to drink, it were handed to a mere stranger to admire its style or workmanship, and then hand it back to the owner, the carrying it away by the stranger with a felonious intent would be as clearly a larceny as if the same act were done by the guest. So I suppose if an artisan or mechanic should go into a room of an inn, by the direction or permission of the owner to repair the furniture, and he should avail himself of the opportunity feloniously to carry away the furniture, the measure of his guilt would be the same with that of the guest who should wrongfully convert any article of the landlord’s furniture put in his room for his temporary use. And so again, in the familiar case (so often mentioned in the books) of one invited to try the paces of a horse in the presence of the owner, and going off with the horse, I apprehend that it would make no difference whether the wrong-doer were the guest of the owner or a mere stranger. In either case, there would be a larceny of the horse.
*816 The true reason, I apprehend, why the guest, in the cases just mentioned, would be held guilty of larceny, is drawn not from the nature of any relation between him and the inn keeper, but from the consideration that the property used by him is expected to remain I in the house or presence of the owner, and so within his constant and immediate control^ This will, I think, be fully seen by a further reference to the paragraph in East, from which the citation, in respect to the wrongful conversion by a guest in the owner’s house, has been made. So (in the very next sentence he proceeds) if a weaver or silk throwster deliver yarn or silk to be wrought by journeymen in his house, and they carry it away with intent to steal it, it is felony; for the entire property remains then only in •the owner, and the possession of the workman is the possession of the owner. But if the yarn had been delivered to a weaver out of the house, and he having the lawful possession, had afterwards embezzled it, this would not be felony; because by the delivery he had a special property and not a bare charge; in the same manner as one who is entrusted with the care of a thing for another to keep. It is worthy of consideration (he continues) whether the above mentioned distinction concerning the legal possession remaining in the owner, after a delivery in fact to another, does not extend to all cases where the thing so delivered for a special purpose is intended to remain in the presence of the owner. For in such case, the owner cannot be said to give any credit to, or to repose any confidence in, the party in whose hands it is so in fact placed; and the thing being intended to be returned to the owner again, and resumable by him every moment, his dominion over it is as perfect as before; and the person to whom it is so delivered has at most no more than a bare limited use or charge, and not the legal possession of it. This fiction, (he adds,) such as it is, *817 is generally admitted to exist in the case of servants, and even in the case of other persons having a special use of goods in the owner’s house: the best reason for which is the presumed presence and superintendence of the owner. And it does not seem more unreasonable to regard goods in the actual presence of the owner, out of his house, as being in his legal possession, though put into another’s hands for a particular purpose, than if such goods were delivered to another for the like purpose in the owner’s house during his absence.
The same author shows, I think, conclusively, that this fiction of the supposed superintendence and consequent exclusive legal possession, by the owner, of goods entrusted to another for a special use, can have no application (except in the case of servants) when, by the terms of the delivery, the goods are to be used neither in the house nor presence of the owner. For at p. 564, after stating that the rule holds universally in the case of servants whose possession of their master’s goods by their delivery or permission is the possession of the master himself, he adds, that supposing the maxim well founded, it leads to an important difference between the case of servants and others: for if there be a delivery of goods by a master to his servant for a particular purpose, and he embezzle them, it amounts to felony, although there be no evidence of a prior felonious intent at the time he received the goods; because even after the delivery to him the” goods continued in the legal possession of the master and not of the servant; and therefore the act of converting them fraudulently is in law a tortious taking from the possession of the master. But it is otherwise in the case of a legal delivery to any other than a servant; for then unless such delivery were procured by fraud and the jury find a previous felonious intent to convert the goods, existing at the *818 time of the delivery, a subsequent conversion is not felony; unless (he further adds) in those cases (which he says will be subsequently pointed out) where the privity of contract is determined. The last expression in the way of exception cannot impair the force of the general proposition asserted by the author, inasmuch as it will be found, on looking to the cases referred to by him in respect to the determination of the privity of contract, that they belong to a class of cases which,’ so far as they could apply here, have been overruled by the decision in Rex v. Banks, already cited.
There are several English decisions, (some of which were cited at the bar,) in respect to the conversion of cattle by parties employed to drive them to market, which may seem at first view to be in conflict with the general principle asserted by East. But in those cases and in cases of a like kind, where convictions have been sustained, it will be found that the judges (when they have assigned the reasons for their opinion) have generally if not invariably declared that they regarded the accused as having acquired the charge or custody of the property as servants. If, however, some of these cases may still be considered as having established exceptions to the general principle, it cannot, I apprehend, be affirmed of any of them, that they have gone to the extent of placing the possession of one to whom property has been loaned, on the footing of the charge or custody by a servant of his master’s goods, or that they assert any doctrine from which to deduce that a transaction, which would otherwise be defined as a bailment, becomes a mere charge, by the consideration that the party to whom the property is delivered, is the visitor or guest of the owner.
But if it were so that the relation in which the prisoner stood to Sweeney could affect the case, it would,' *819 I apprehend, have still to be shown that the delivery and use of the gun was incidental or accessory to that relation. Of this there is no proof. It does not pear that it was the custom of Sweeney to furnish his guests with guns for their amusement, or that he held out to the public any expectation that he would do so. The transaction is one which might have taken place between Sweeney and any one of his neighbors (not a guest) as naturally as between him and the prisoner. And if it had, could we have hesitated to say that there was a bailment of the gun by loan ? The gun was delivered, not that something might be done to it, or with it, for the benefit of the owner, but to be used by the prisoner for his own amusement. There was nothing said from which it can be inferred that it was to be used merely in the presence of Sweeney or within his hearing or call or upon his farm.
The prisoner, without any violation of the terms or spirit of the license given him, might, in pursuit of his game, have gone to any place from which he could return before the expiration of the time when his return might be reasonably expected. And he might thus have lawfully placed himself and the property in his possession during such time entirely beyond the control or supervision of Sweeney. And there is nothing in the record from which we can infer he did not. During such period the dominion of Sweeney over his property was to a certain extent, by his own consent, necessarily suspended by his want of the present power either to resume the possession, or to demand it, and place the prisoner in the position of a wrong-doer on his refusal to return it.
The transaction seems to me, therefore, to have all the features of a loan. As such, it invested the prisoner with a legal possession. In the subsequent conversion of the property he was guilty of no trespass, and consequently of no felony.
*820 It may be that the prisoner’s conduct, considered morally, is in little or no degree less deserving of punishment than if he had acquired the possession of the property by fraud or stealth; still I have been unable to see (as the proofs stand) on what established rule of criminal law he can be treated as guilty of larceny. And having as I conceive no warrant to stretch or fashion the law to meet the supposed or real moral exigencies of the case, I cannot concur in a judgment affirming his conviction.
I am of the opinion that the prisoner is entitled to a new trial.
Judgment affirmed, for the reasons stated in the opinion of Moncure, J.